EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Raimundo Espinoza Chirino<br><br>Recurrido<br><br>v.<br><br>María José Andrade Núñez<br><br>Peticionario | Certiorari<br><br>2018 TSPR 169<br><br>201 DPR \_\_\_\_ |

Número del Caso: CC-2018-668


Fecha: 3 de octubre de 2018


Tribunal de Apelaciones:

      Región Judicial de San Juan


Abogada de la parte Peticionaria:

      Lcda. Rosa I. Ward Cid


Abogados de la Parte Recurrida:

      Lcdo. Antonio Bazán González
      Lcda. Emma Rochet Santoro


Materia: Sentencia del Tribunal con Opinión disidente.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Raimundo Espinoza Chirinos

    Recurrido


       v.                    CC-2018-0668     Certiorari

María José Andrade Núñez

    Peticionaria


SENTENCIA
(REGLA 50)


San Juan, Puerto Rico, a 3 de octubre de 2018.

Examinada la petición de *certiorari,* presentada en el caso de epígrafe, en virtud de la facultad que nos confiere la Regla 50 de nuestro Reglamento, 4 LPRA Ap. XXI-B, se expide el auto solicitado y se dicta Sentencia mediante la cual revocamos el dictamen del Tribunal de Apelaciones de 29 de junio de 2018, notificado el 3 de julio de 2018, y ordenamos al Tribunal de Primera Instancia que, a raíz del tiempo trascurrido y los cambios en las circunstancias de las partes, revalúe en los méritos la nueva solicitud de traslado del menor de edad.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García emitió una Opinión Disidente a la cual se le unieron la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón. La Juez Asociada señora Rodríguez Rodríguez disiente del curso de acción seguido por una mayoría de los integrantes de este Foro. Ello, puesto que no está de acuerdo con atender este asunto mediante el mecanismo excepcional provisto en la Regla 50 de nuestro Reglamento, 4 LPRA

Ap. XXI-B. El uso indiscriminado de esta Regla para solucionar las controversias ante este Tribunal tiene el efecto de privar a las partes recurridas de los términos con los que ordinariamente contarían para comparecer y expresar su posición. Por entender que la Regla 50 sólo debe estar disponible para casos que requieran una solución expedita y en los que se pueda prescindir de evaluar los argumentos de las partes en los méritos, disiento del trámite procesal mediante el cual se dispone de la presente controversia.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | | |
|---|---|---|---|
| Raimundo Espinoza Chirinos<br><br>Recurrido<br><br>v.<br><br>María José Andrade Núñez<br><br>Peticionaria | | CC-2018-0668 | Certiorari |

**Opinión Disidente emitida por el Juez Asociado señor RIVERA GARCÍA a la cual se unen la Jueza Asociada señora PABÓN CHARNECO y el Juez Asociado señor FELIBERTI CINTRÓN.**

En San Juan, Puerto Rico, a 3 de octubre de 2018.

A la luz de las consideraciones que expongo a continuación, disiento del proceder de una Mayoría de este Tribunal. Es mi criterio que el Tribunal de Apelaciones no erró al confirmar la Orden recurrida en la que el foro primario se negó a considerar de plano la solicitud de la peticionaria de permanecer un tiempo adicional en Uruguay con el menor y le ordenó regresar a Puerto Rico.

**I**

Luego de que se disolviera el vínculo matrimonial que los unía, la Sra. María José Andrade Núñez (señora Andrade Núñez o peticionaria) y el Sr. Raimundo Espinoza Chirinos (señor Espinoza Chirinos o recurrido) acordaron, entre otras cosas, cómo regirían las relaciones filiales entre el padre y el hijo menor de edad habido en dicha relación (J.R.E.A.). Además, estipularon cómo debían proceder en caso de que

alguno de ellos, por no ser oriundos de Puerto Rico, decidiera trasladar su residencia fuera del territorio de Puerto Rico. El 13 de agosto de 2015 la señora Andrade Núñez solicitó el traslado de J.R.E.A. de Puerto Rico a Uruguay. Oportunamente, el señor Espinoza Chirinos presentó su oposición al traslado. Alegó que el mejor bienestar del menor no está en residir en un hemisferio distinto al de su padre y que el traslado disminuiría significativamente sus relaciones paternofiliales. Pues, él ha sido un padre presente en la vida de su hijo. Sostuvo que estaba dispuesto a asumir la custodia del menor en caso de que la peticionaria insistiera en regresar a su país.[1]

Posteriormente, el 7 de julio de 2017, el Tribunal de Primera Instancia dictó una Resolución en la cual denegó el traslado. En su dictamen, decidió no acoger el informe social que emitió el Trabajador Social de la Unidad de Relaciones de Familia. En apretada síntesis, el foro primario consideró que el traslado sería un cambio trascendental en la vida del menor incidiendo en su bienestar, porque entre muchas otras cosas este perdería el contacto directo y personal con su papá. Aunque al momento de adjudicar la petición de traslado el juzgador no contaba con un informe social completo, este examinó cuidadosamente toda la prueba documental y testifical que

---

[1] Puesto que entre las razones que esbozó la señora Andrade Núñez para solicitar el traslado era que en Uruguay tenía mejores oportunidades para su desarrollo profesional. Véase *Moción informativa sobre estado actual*, Apéndice de la Petición de *certiorari*, págs. 50-52.

se presentó y concluyó que **las necesidades físicas, educativas y emocionales del menor** estaban mejor atendidas en Puerto Rico.

Tres meses luego de la determinación del Tribunal de Primera Instancia y ante la situación de emergencia que se vivió en el país por el paso del huracán María, la peticionaria se trasladó con el menor a Uruguay en octubre de 2017. Ello con la anuencia del señor Espinoza Chirinos con el propósito de beneficiar a su hijo dada la situación de falta de energía eléctrica y el cierre temporero de la escuela a la que asistía el niño. Antes de partir, acordaron que regresarían a Puerto Rico el 20 de diciembre de 2017. Sin embargo, la madre de la peticionaria se enfermó. Esta última consultó al recurrido si el menor podía quedarse en Uruguay para ella poder estar con su madre. El recurrido accedió a la petición luego de considerar la situación de salud y el diagnóstico de enfermedad grave por el que atravesaba la madre de la peticionaria. Así, se pospuso el regreso del menor hasta el 9 de abril de 2018.

Posteriormente, el 21 de marzo de 2018 la peticionaria remitió al señor Espinoza Chirinos un correo electrónico en el que expresó que el niño se estaba adaptando en Uruguay e insistió que reconsiderara su decisión y le permitiera al menor permanecer en ese lugar. El padre replicó que desde un principio ambos conocían que la salida de Puerto Rico fue temporera y por causa de la

emergencia que surgió ante el fenómeno atmosférico. Sin embargo, expresó que no estuvo de acuerdo con que el menor permaneciera en ese país. Asimismo, le suplicó que no tomara ventaja sobre la situación y que regresara con el niño para la fecha pactada puesto que había transcurrido mucho tiempo sin tener contacto directo con su hijo.

En desacuerdo, el 28 de marzo de 2018 la peticionaria, estando aún en Uruguay, por medio de su representante legal presentó ante el Tribunal de Primera Instancia una *Moción informativa sobre situación actual*. Explicó cómo su situación laboral cambió después del paso del huracán María. Señaló al tribunal en detalle cómo en esos meses se estableció y se adaptó en Uruguay. Finalmente, solicitó al tribunal que le permitiera permanecer allí "por al menos un tiempo adicional". Así, a menos de un año de la determinación inicial, el Tribunal de Primera Instancia notificó una Orden en la que proveyó un "no ha lugar" y ordenó a la señora Andrade Núñez "a regresar a Puerto Rico al menor [J.R.E.A.] inmediatamente".[2] Posteriormente, ante una *Urgente réplica a urgente contestación* que la peticionaria presentó, el 8 de mayo de 2018 el foro de primera instancia notificó otra Orden en la cual declaró "no ha lugar".

No conteste con esta determinación, el 6 de junio de 2018 la peticionaria presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. Planteó que ese foro erró

---

[2] La Orden fue emitida el 17 de abril de 2018 y notificada el 25 de abril de 2018. Véase Apéndice de la Petición de *certiorari*, pág. 69.

al negarse a reevaluar la solicitud de traslado a la luz del cambio dramático en las circunstancias provocadas por el paso del huracán María por Puerto Rico y no haber fundamentado dicha determinación. El 3 de julio de 2018, el foro apelativo intermedio notificó una Sentencia mediante la cual confirmó al Tribunal de Primera Instancia. Resolvió que si bien las determinaciones de custodia no son cosa juzgada, su modificación posterior tiene que estar debidamente fundamentada. Además, consideró que la peticionaria pretendía impugnar tardíamente la Resolución notificada el 3 de julio de 2017. En desacuerdo, el 17 de julio de 2018, la peticionaria acudió ante este Tribunal mediante recurso de certiorari. Sostuvo que se cometieron los siguientes señalamientos de error:

> PRIMERO: ERR[Ó] EL HONORABLE TRIBUNAL DE APELACIONES AL CONFIRMAR LA ORDEN RECURRIDA, LA CUAL ESTABA DESPROVISTA DE FUNDAMENTOS DE HECHOS NI DE DERECHO Y AL SUBROGARSE EN LA POSICI[Ó]N DEL FORO PRIMARIO PARA HACER SUS PROPIAS DETERMINACIONES F[Á]CTICAS Y DE DERECHO.

> SEGUNDO: ERR[Ó] EL HONORABLE TRIBUNAL DE APELACIONES AL CONFIRMAR LA ORDEN RECURRIDA CUANDO EL FORO PRIMARIO SE NEG[Ó] INJUSTIFICADAMENTE A REEVALUAR LA SOLICITUD DE TRASLADO DEL MENOR A URUGUAY A PESAR DE QUE LA PETICIONARIA FUNDAMENT[Ó] DETALLADAMENTE EL CAMBIO DR[Á]STICO EN SUS CIRCUNSTANCIAS LUEGO DEL PASO DEL HURAC[Á]N MAR[Í]A Y EL HECHO DE QUE EL MENOR TIENE Y YA DISFRUT[Ó] DE UNA MEJOR CALIDAD DE VIDA EN URUGUAY.

## II

Nótese, que en la determinación inicial que emitió en julio de 2017 el foro primario, al denegar la solicitud de

traslado solicitada por la señora Andrade Núñez, este analizó en detalle si la decisión del traslado operaba en el mejor bienestar del menor para garantizar sus necesidades físicas, educativas y emocionales. Al ponderar todos los factores establecidos jurisprudencialmente para hacer tal determinación, entendió que la balanza se inclinaba en contra del traslado, pues este no operaría en beneficio del menor. Entre otras cosas, avaló en parte la conclusión del Trabajador Social y de la Dra. Elsa B. Cardalda en cuanto a que existen fuertes lazos de apego entre el menor y su padre. Razonó que de permitirse el traslado disminuiría significativamente el tiempo que el menor compartiría con su padre. Concluyó que el señor Espinoza Chirinos "ha sido un padre presente en la vida de su hijo" compartiendo con el menor y participando activamente en todo lo relacionado a su salud, educación, necesidades afectivas e interrelación con los demás miembros de la familia. Coligió que "la alteración sobre las relaciones paternofiliales, que vendrían a consecuencia del traslado, sería más significativo y difícil de asimilar para el menor".[3] Más aún, cuando **el niño manifestó al Trabajador Social que "no lo puede ver siempre"**, al éste último preguntarle qué era lo menos que le gustaba de su papá. En consecuencia, luego de considerar un sinnúmero de factores, detallados con mucha precisión y fundamentados con mucho rigor en una Resolución de veinticinco (25) páginas, resolvió que "la

---

[3] Resolución del Tribunal de Primera Instancia, págs. 1-25.

oportunidad de crecer con su familia materna no justifica lo que pierde, el crecer junto a su padre y su hermano". Es decir, que "el impacto del traslado en la relación con el menor con su padre y con su hermano es mayor que cualquier beneficio que pudiera derivar del mismo".[4]

Posteriormente, ante la emergencia que surgió luego del paso del huracán María por Puerto Rico, el señor Espinoza Chirinos con el único propósito de beneficiar al menor permitió que la madre se trasladara con este a Uruguay --de forma temporera-- hasta tanto la situación en Puerto Rico mejorara. Sin embargo, cuando se cumplió el tiempo acordado para regresar, la situación de salud de la madre de la peticionaria se agravó por lo que el padre del menor consintió a que permanecieran un tiempo más. Al cabo de unos meses, la señora Andrade Núñez le pidió al recurrido que le permitiera relocalizar al menor permanentemente en Uruguay a lo que este se negó.

Una semana después, la peticionaria presentó ante el Tribunal de Primera Instancia una *Moción informativa sobre situación actual* en la que solicitó al tribunal que se le permitiera "permanecer en Uruguay al menos un tiempo adicional".[5] Ante este pedido el recurrido presentó su oposición. Sostuvo que, ante la emergencia suscitada por el huracán y la situación de salud de su madre, de buena fe permitió que ambos viajaran a Uruguay, pero que en ningún momento consintió a que permanecieran en ese lugar.

---

[4] *Íd.*
[5] Apéndice de la Petición de *certiorari*, págs. 66-68.

Puntualizó que le preocupaba de sobremanera que la peticionaria tuviera la intención de crear "una situación de asentamiento y de echar raíces en el lugar para abonar a una prueba futura".[6] Finalmente, solicitó al Tribunal de Primera Instancia que dejara en vigor la Resolución en la que adjudicó el asunto.

El foro primario atendió la solicitud de la peticionaria y luego de considerar los argumentos de ambas partes la denegó. El Tribunal de Apelaciones confirmó. Razonó que la determinación que había realizado el Tribunal de Primera Instancia sobre la petición de traslado fue razonable y emitida conforme a derecho. Sostuvo, además, que la peticionaria impugnó tardíamente la Resolución que emitió el foro primario al respecto. Además, señaló que la señora Andrade Núñez no podía utilizar la situación de emergencia acontecida como pretexto para pedir relocalización ya que a pesar de que el fenómeno atmosférico sacudió fuertemente a la Isla, el caos y el desasosiego habían mermado casi en su totalidad. Advirtió que "el menor goza nuevamente de educación privada en Puerto Rico, dos residencias urbanas adecuadas y con todos los servicios esenciales, así como con la atención y el amor de ambos progenitores".[7]

En vista de lo anterior, luego de examinar detenidamente el expediente, coincido con el proceder de

---

[6] *Urgente contestación a moción informativa sobre situación actual* radicada por la parte demandante, Apéndice de la *Oposición a que se expida el recurso de certiorari*, págs. 40-43.
[7] Sentencia del Tribunal de Apelaciones, págs. 1-14.

ambos foros. El Tribunal de Primera Instancia tenía ante sí una solicitud para que el menor permaneciera en Uruguay un tiempo no especificado y la oposición de un padre ante la preocupación de que la madre retuviera al menor en un país extranjero sin su consentimiento. La solicitud fue denegada por lo que el foro primario ordenó el regreso del menor a Puerto Rico. No hay abuso de discreción en este proceder. A esto se añade que como cuestión de hecho, meses antes, el foro primario emitió una Resolución bien fundamentada en la que proveyó no ha lugar al requerimiento de la peticionaria de permanecer en Uruguay. Ello por estar convencido de que **el mejor bienestar del menor era en Puerto Rico con ambos padres.** Debido a que la solicitud de traslado ya había sido adjudicada, el Tribunal de Primera Instancia no tenía la obligación de realizar determinaciones de hecho y conclusiones de Derecho al resolver la *Moción informativa sobre estado actual.*[8]

Por lo tanto, disiento de la Sentencia que emite la Mayoría de este Tribunal en la que expide el auto solicitado, revoca el dictamen del Tribunal de Apelaciones y ordena al Tribunal de Primera Instancia a reexaminar la solicitud de traslado del menor fuera de Puerto Rico.

Edgardo Rivera García
Juez Asociado

---

[8] Véase R. 42.2(d) de Procedimiento Civil, 32 LPRA Ap. V.